[Civ. No. 7747. Second Appellate District, Division One.—March 11, 1932.]

CALIFORNIA THORN CORDAGE, INC. (a Corporation), Respondent, v. WILLIAM DILLER et al., Appellants.

Frank M. Willcox, George A. Judson, Hill, Morgan & Bledsoe and Benjamin F. Bledsoe for Appellants.

Halverson & Halverson and George I. DeVor for Respondent.

CONREY, P. J.—At the time of filing the amended complaint in this action (March 31, 1928), the defendant William Diller was a stockholder and director of plaintiff corporation, and also was a creditor of plaintiff. As such creditor he held several notes of the corporation, some of which were secured by mortgage and others were unsecured. Although Elizabeth Diller is named as a defendant, she had no part in the transactions now to be considered, and it will be convenient and sufficient to refer to William Diller as the defendant, or as the appellant, and to describe the plaintiff and respondent as the Corporation.

At the time above mentioned there were pending in the Superior Court of Los Angeles County several actions of Diller against the Corporation, as follows: No. 240962, on a note for the principal sum of $6,873,90; No. 240963, on a note for the principal sum of $23,041.50; No. 240964, for the foreclosure of a chattel mortgage given to secure a note of which the principal sum was $15,000; No. 240965, for the foreclosure of a real property mortgage given to secure a note of which the principal sum was $60,000.

The objects of the present action as set forth in the prayer of the complaint (so far as pertinent to this appeal), were: 1. That an account be taken, etc., and that it be adjudged that said loans are usurious, and that the true amount thereof be determined. 2. That the defendant be enjoined from slandering the credit and good reputation of the plaintiff. 3. That the defendant be enjoined from conveying information or trade secrets of the plaintiff to its competitors in business. 4. That said actions be consolidated and that the defendant be enjoined from bringing any other suits against the plaintiff for the purpose of harassing or oppressing it or in contravention of a certain "agreement of December 2, 1926" (set out in the complaint). 5. That defendant be temporarily enjoined from prosecuting his said pending actions. 6. For general relief, as equity might require.

The complaint herein contains allegations of fact which may be described in general terms as charging that the notes were usurious; that the defendant, contrary to his duty as a director and at one time president of the Corporation, and also in violation of certain duties of management assumed by him under said agreement of December 2,

1926, and for the purpose of wrecking the Corporation, had wilfully refused to aid the Corporation in negotiating other loans, and "by slandering the credit and business" of the Corporation had prevented it from obtaining funds for the operation of its business; that he "conveyed information and trade secrets of the plaintiff to its competitors in business"; that without making any effort "to raise finances for said corporation", Diller commenced said actions numbered 240962 and 240963, and caused attachments to be levied on the property of the Corporation, so that the Corporation was required to give large bonds for release of the attachments, all at great expense, in order to resume its business; that in order to further injure the Corporation and to drive it into bankruptcy the defendant commenced said foreclosure actions No. 240964 and 240965, all of which was in violation of the covenants and agreements entered into by the defendant in said agreement of December 2, 1926, and of his duties as president and director of the plaintiff, and as chairman of the finance committee constituted by said agreement. It was further alleged that in addition to the sums included in said pending actions the defendant had loaned to the plaintiff certain other sums of money represented by promissory notes of date October 1, 1926, the aggregate principal sums thereof amounting to $27,530.84; and that the defendant now threatens to commence other actions upon each of said promissory notes, and to attach the property of the plaintiff and to close down its business and to drive it into bankruptcy; that the defendant is one of the largest stockholders of the plaintiff and until January 12, 1928, was president thereof, and is still a director thereof, and chairman of said finance committee, and has repeatedly threatened, etc., and unless enjoined and restrained will bring other actions, etc. Upon the issues presented by this complaint and the answer thereto the case went to trial. Thereafter the court made its findings of fact and entered its decree in favor of the plaintiff, from which the defendant now presents this appeal.

Pursuant to the findings of fact and conclusions of law as determined by the trial court, the principal terms of the judgment and decree are substantially as follows: The defendant is enjoined and restrained from slandering the credit or good reputation, etc., of the plaintiff. The de-

546

fendant is removed from office as a director of the Corporation for unfaithfulness in office. The defendant is enjoined and restrained from further prosecuting the said four pending actions and from further prosecuting any action on the obligations upon which said or either of said actions are brought, or upon the promissory notes mentioned and described in the findings, "and said defendants and each of them, are hereby ordered and directed to dismiss said and each of said actions forthwith, and the attachments issued therein shall be released, and all bonds or undertakings given therein shall be exonerated, and in case of the failure or refusal of said, or either of said defendants, to dismiss said, or either of said actions or to release said attachments, or to exonerate said bonds or undertakings, the clerk of this court is hereby ordered so to do for and on behalf of said and each of said defendants, upon application of the plaintiff, but said defendants shall not be absolved of contempt for such failure or refusal by dismissal thereof or other action by said clerk".

The decree (entered January 4, 1929), next finds and declares the amount that will be due on January 30, 1929, upon the obligations included in the foreclosure actions; and declares the several amounts of indebtedness upon the obligations described in actions 240962 and 240963, as well as upon the said several promissory notes upon which no action has yet been brought.

The decree then proceeds as follows: "It is further ordered, adjudged and decreed that the amount so due on said mortgage indebtedness, to-wit: the sum of $49,505.25, shall be, and the same is hereby declared to be a first lien upon all the real estate belonging to the plaintiff and described as follows, to-wit: (description) and a first lien upon all the following described personal property of the plaintiff, to-wit: (description). Provided, however, that the defendants shall dismiss said foreclosure suits and surrender up to the clerk of this court for cancellation, the said mortgages and said mortgage notes before this decree shall become final; it is further ordered, adjudged and decreed, that the amount of said indebtedness so due and to become due the defendant William Diller from the plaintiff, to-wit: (stating the sums found to be due in actions 240962 and 240963, and said other unsecured notes), shall be and the same is hereby

declared to be a lien on all the real and personal property of the plaintiff hereinbefore described, subject to said first lien; provided, however, the defendant William Diller shall likewise surrender up to the clerk of this court for cancellation, the said promissory notes, now evidencing said obligations before this decree shall become final.'' Next, it was ordered that payment of all of said indebtedness be stayed and postponed, for the period of eighteen months after the decree herein shall become final. "It is further ordered, adjudged and decreed that in the event the defendants shall fail to surrender up said obligations for cancellation that the lien herein established shall not attach by virtue of this decree, but in case said obligations are surrendered as herein provided, then said lien shall attach, and in the event that said indebtedness, or any part thereof, shall not be paid at the end of said period of eighteen months, an order of sale shall issue herein, and said property shall be sold in the manner provided by law on foreclosure, and the proceeds thereof, etc., shall be applied,'' etc., as directed.

Prior to the filing of his answer, defendant demurred to the complaint, and this demurrer was overruled. The grounds of demurrer were that the complaint did not state facts sufficient to constitute a cause of action, and also that the complaint was in certain respects uncertain, and for like reasons ambiguous. This demurrer should have been sustained. We so decide, primarily because the facts alleged do not justify the maintenance of a suit in equity for the purpose of obtaining the demanded relief.

■ The complaint does not state a case authorizing an injunction against prosecution by appellant of his pending actions against respondent Corporation, nor against the commencement by appellant of actions to recover judgments on any other notes held by him. If any action is prematurely commenced, that fact may be asserted by way of defense in the action itself. Or if obligations are tainted with usury, any defense arising out of that fact may likewise be presented. As to such defenses, there is not any sufficient reason for equitable relief by way of injunction. ■ Moreover, the answer of a defendant, claiming that an action has been commenced prematurely is a dilatory plea, not

affecting the merits of the plaintiff's cause of action. (*Seches* v. *Bard,* 215 Cal. —— [8 Pac. (2d) 835].)

■ To meet this obstacle to the relief demanded in this case, respondent relies chiefly upon the proposition that the facts allged show not only that by virtue of said agreement of December 2, 1926, the maturity of the indebtedness represented by the notes was postponed for two years, but also that appellant by reason of his conduct in his relations with the corporation and its affairs, was estopped to deny that the time of such maturity of the notes was so extended. Both contentions are without merit. The said agreement of December 2, 1926, did contain a provision for renewal, or extension of time for payment, of all obligations then owing by the Corporation to Diller, ''for a period of time *not to exceed* two years from the date hereof, as in the judgment of said Finance Committee may be necessary'', etc. (The finance committee was provided for in the agreement, to act on behalf of the Corporation.) The complaint does not show any further action by way of agreement extending time of maturity of the notes. The allegations that thereafter the defendant neglected to perform his duties as a member of said finance committee, and has prevented the Corporation from obtaining loans by slandering the credit and business of the Corporation, etc., are too indefinite to present any question of estoppel as against defendant's rights to enforce payment of his notes whenever they became due. (We need not now seek to determine the merits of the suggestion that said agreement, being an attempted abdication of the authority of the board of directors, is void.)

■ A further claim is made by respondent that, as alleged in the complaint, the said actions were instituted by appellant not merely to obtain payment of the notes, but for the purpose of wrecking the Corporation and driving it into bankruptcy, by overwhelming it with numerous foreclosures and attachments of its property. And it is argued that by reason of these facts, respondent became entitled to an injunction, and to a determination of the entire controversy in one action. In other words, the Corporation, made defendant in four actions on four separate obligations, and threatened with other actions on other separate obligations, claims the right by a suit in equity, to obtain from

"the chancellor" a decree which in this one action shall be substituted for and stand in lieu of any and all such judgments as otherwise might be obtained in said several actions of appellant Diller against respondent Corporation. Here again the answer is, that if the notes were due, the holder had a right to sue, whatever his motive might be. It is only because they were not due (if such be the fact) that the prosecution of his actions might be delayed.

Of course, if appellant was prosecuting several actions where one would be sufficient, and if the several actions were such that they might be consolidated and tried as one action, there is an appropriate procedure for that purpose. (Sec. 1048, Code Civ. Proc.) The obvious and direct method in that situation would take the form of a motion made in those actions, or in some one of them, with due notice to all interested parties, for an order of consolidation. If the cases were open to that procedure, a separate action like the present action would not be necessary. And if the cases were not so related to each other that their consolidation could be demanded as of right, it would be equally true that the debtor could not, for his mere convenience, require that they be absorbed into a suit of his own creation.

"In an action of equitable cognizance, it is the policy of our law to allow a party to obtain in one action all the relief to which he may be entitled on account of a single transaction, although such relief may be of a character that would require several suits under the strict rules relating to the forms of common-law actions prior to the adoption of the codes. (*Murphy* v. *Crowley,* 140 Cal. 141, 145 [73 Pac. 820].) Equity does not deal with cases piecemeal, and in a proper case, it may give other and different relief justified by the circumstances." This quotation is from the very late case, *California Trust Co.* v. *Cohn,* 214 Cal. 619 [7 Pac. (2d) 297, 300]. But there must be "a proper case" before the rule can apply. Two of the pending actions described in respondent's complaint are mortgage foreclosures, which must be conducted according to the statutory procedure provided for such cases. (Code Civ. Proc., sec. 726.) The others are actions at law, arising out of different transactions wholly separate from those of the mortgages, and with additional parties defendant, and resting entirely in the law side of the court. It is, indeed,

conceivable that under some circumstances, where actions are being wrongfully prosecuted, and where there exists no other remedy that would be adequate for the protection of the defendant in such actions, the iniquitous arm of the wrong-doer may be stayed by the power of injunction. The complaint here, however, does not comply with these conditions; for if the facts be as alleged therein, those facts themselves would constitute a defense, complete and adequate for every necessary purpose.

In addition to the demand for an injunction against further prosecution of defendant's actions against the plaintiff, the complaint asked that defendant be enjoined from slandering the credit and good reputation of the plaintiff. The demurrer for uncertainty in regard to the allegations on this topic should have been sustained. The allegations concerning the conveying of trade secrets of plaintiff, by defendant, to its competitors in business, were likewise insufficient; but this point needs no further attention, since the court by its findings determined that the defendant "has not conveyed information and trade secrets of the plaintiff to its competitors in business".

The demurrer to the amended complaint having been overruled, and the defendant having filed his answer, the case was tried before the court. At the beginning of the trial, counsel for defendant objected to the introduction of any evidence, upon the ground that the complaint failed to state a cause of action, and failed to state facts sufficient to entitle the plaintiff to any relief. This objection was overruled.

Appellant has presented for consideration sundry other assignments of error, to the effect that certain findings are not sustained by the evidence, and that some of the findings are in themselves defective, and that wrong conclusions of law were drawn from the findings, and that the decree is erroneous as a whole and in various provisions thereof. We find that it is not necessary to enter into a discussion of all of the questions thus raised. In addition to the statements which have been made, and the opinions expressed, in the preceding paragraphs, a statement concerning a few vital errors in the decree will be sufficient.

■ As we have seen, two of the defendant's pending actions were for the foreclosure of mortgages upon property of the Corporation. By virtue of those mortgages defend-

ant acquired liens on the described property from the time of execution thereof. In the other pending actions appellant had acquired attachment liens upon property of respondent, and those attachments had been released by virtue of the substitution of undertakings given for that purpose. In these securities also, appellant had acquired vested rights. Even if in this action the court was authorized to enter a decree, it must be remembered that the court has found herein that all of the notes are existing obligations of respondent, upon which respondent is indebted at least to the extent of the amounts shown by the court's findings. This being so, an appropriately framed decree necessarily would have preserved for the benefit of appellant the liens of the mortgages, and would have given him the further benefit of judgment permitting him to recover upon the notes which were not secured by mortgage, and to recover the deficiencies, if any there might be, after foreclosure sale of the mortgaged properties. Instead of entering a decree directed to the preservation of these undoubted rights of appellant, the court by its decree has undertaken to order the surrender and cancellation of all of the notes and mortgages, and dismissal of the several actions, and to substitute therefor a lien created and declared by the decree itself. It is our opinion that there is nothing in the findings or in the law applicable thereto which authorizes the entry of such a decree. We do not know that other creditors of respondent Corporation, or purchasers of property belonging to the Corporation, have acquired intervening rights since the recording of the mortgages. But if the mortgages are canceled by virtue of this decree the door is left wide open for proof of the acquisition of such third party rights by persons who are not parties to this action, and who by the assertion of prior rights conceivably might place themselves ahead of the liens attempted to be created by this decree.

We have not undertaken at this time to verify the claim of appellant that the amount of indebtedness of respondent to appellant as found by the court is less than the total amounts admitted by the complaint, and also less than the amounts unquestionably established by the evidence. If we are to accept the results of the record of the evidence as summarized in tabulated form in the brief for appellant, it would appear that the amounts of such indebtedness as

fixed by the decree herein are very much less than they should be. The brief on behalf of respondent, instead of pointing out errors in said tabulated statements presented by appellant, has given us a separate statement formulated in a different manner, so that it is at least difficult to compare one with the other. Since upon other grounds which have been herein stated it is necessary that the judgment be reversed, we refrain from going into the record for the purpose of analyzing these statements and making up a new one from which we might determine the true amounts of the several items of indebtedness, and perhaps also might determine the merits of respondent's claim that the mortgage notes were tainted with usury.

The judgment is reversed.

Houser, J., concurred.

York, J., deeming himself disqualified, took no part in this decision.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 6, 1932, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 9, 1932.